SPARTAN EQUIPMENT COMPANY v. AIR PLACEMENT EQUIPMENT COMPANY.

(Filed 29 January, 1965.)

**1. Appeal and Error § 38—**

Assignments of error not brought forward and discussed in the brief are deemed abandoned. Rule of Practice in the Supreme Court No. 28.

**2. Appeal and Error § 49—**

Findings of fact supported by competent evidence are conclusive on appeal notwithstanding that there may also be evidence *contra.*

**3. Process § 13—**

Whether service of process on a nonresident corporation by service on the Secretary of State under G.S. 55-145 will support an *in personam* judgment against the corporation is a question of due process and must be determined in accordance with decisions of the U. S. Supreme Court. Fourteenth Amendment to the Federal Constitution; Art. I, § 17 of the Constitution of North Carolina.

**4. Same—**

Findings of fact, supported by evidence, to the effect that over a period of years defendant's agents paid repeated visits to this State to demonstrate the use and operation of machinery sold by defendant and instructed the purchasers thereof in its operation, *held* sufficient to support the conclusion that defendant was doing business in this State so as to render it amenable to service of process by service on the Secretary of State, and therefore order denying its motion to dismiss for lack of service will be upheld notwithstanding that other immaterial findings were not supported by evidence and that some conclusions of law were denominated findings of fact. G.S. 55-144, G.S. 55-146(a) (b).

**5. Trial § 57—**

The court is required to find only the ultimate facts, and when the court finds crucial facts sufficient to support its order, exception to the court's failure to find other evidentiary facts cannot be sustained.

**6. Appeal and Error § 7—**

A party may demur *ore tenus* in the Supreme Court.

**7. Contracts § 31—**

As a general rule, a third person who, by intermeddling, induces one of the negotiating parties not to enter into a contract which he would have executed except for such intermeddling, is liable for the resulting damages provided such interference is not done in the exercise of legitimate rights, but is in furtherance of malicious design to injure one of the contracting parties or to gain some advantage at this expense.

**8. Contracts § 32—**

Plaintiff alleged that it was a distributor of defendant and that defendant induced one of plaintiff's prospects to purchase equipment from an-

other distributor instead of plaintiff. *Held:* In the absence of allegation that the prospect would have consumated an agreement with plaintiff except for the malicious interference and in the absence of allegation of facts supporting the conclusion of malice on the part of defendant, defendant's demurrer must be allowed.

**9. Pleadings § 2—**

It is not sufficient for a pleader to allege conclusions, but it is required that he allege facts from which the legal conclusions arise.

**10. Pleadings § 19—**

The allowance of a demurrer *ore tenus* to a complaint containing a defective statement of a cause of action does not require dismissal, since plaintiff has the right to move to amend if he so desires. G.S. 1-131.

APPEAL by defendant from *Walker, S. J.*, 27 January 1964, Schedule "D" Civil Session of MECKLENBURG.

Plaintiff, a North Carolina corporation, with its principal place of business in Mecklenburg County, instituted a civil action in the superior court of Mecklenburg County against defendant, a Missouri corporation, alleging damages in two causes of action: (1) For an alleged breach of express written and oral warranties to the effect that a CP-30 concrete placer purchased by plaintiff from defendant was a high quality general purpose concrete placer which would perform well, and was merchantable, and (2) for an alleged intentional and malicious interference with plaintiff's business by diverting plaintiff's prospective customer Meredith Swimming Pool Company to Arrow Equipment Company, with the intention of damaging plaintiff's business, thereby causing plaintiff to lose a sales commission in the amount of $419.50.

This action came on to be heard by Judge Walker upon a special appearance by defendant, and upon its motion to quash the service of summons and complaint upon it upon the ground that it, a corporation organized and doing business in the State of Missouri, was not at the time of the commencement of this action, and is not now, engaged in the transaction of business in the State of North Carolina, that it has no officer, director or managing or local agent, or any person, firm or corporation performing any duties in the State of North Carolina, is engaged exclusively in interstate commerce, and to hold that the attempted service of summons in this case on it by serving it on the Secretary of State of North Carolina constitutes a proper service on it would violate the 14th Amendment to the United States Constitution, and Article I, section 17, of the North Carolina Constitution.

From an order denying its motion, and holding that service of summons and complaint on defendant in this action is valid, defendant appeals.

*Dockery, Ruff, Perry, Bond & Cobb by William H. McNair for defendant appellant.*

*Grier, Parker, Poe & Thompson by Gaston H. Gage for plaintiff appellee.*

PARKER, J. The parties stipulated "the mechanics of service and return set forth in subsections (a) and (b) of Section 55-146 of the General Statutes of North Carolina were in all respects complied with."

Judge Walker heard defendant's motion upon two affidavits of T. M. Pfaff, president of plaintiff, to which were attached and made parts thereof thirteen letters by plaintiff and defendant, and upon an affidavit of H. L. Kalousek, president of defendant, an affidavit of James B. Kelly, southeastern territorial manager for defendant, and an affidavit of Jetton King, president of Arrow Construction Equipment Company.

From the affidavits offered by the parties, and from plaintiff's verified complaint, Judge Walker made specific findings of fact. In his findings of fact, after reciting a summary of plaintiff's two causes of action, and that plaintiff is a North Carolina corporation, with its principal office in Mecklenburg County, North Carolina, and that defendant is a Missouri corporation, Judge Walker made the following findings of fact:

"[T]hat (3) on numerous occasions defendant's agents and salesmen, and in particular the defendant's southeastern territorial manager, James B. Kelly, made visits in the State of North Carolina on behalf of the defendant corporation and therein solicited business, instructed purchasers as to the use of machines manufactured by defendant, and supervised the installations of said machines, particularly from October, 1960, to March, 1963, and the Court finds specifically as fact from the complaint and affidavits presented to the Court at the time of said hearing that (4) in particular the plaintiff's order of September 5, 1961, for a CP-30 concrete placer involved in the alleged breach of contract action and the order for a model 505 mix-elevator involved in the tort action were solicited by agents and representatives of the defendant corporation in the State of North Carolina, and that the said alleged breach of contract cause of action arose out of a contract made by and between plaintiff and defendant at the time complained of in the State of North Carolina and to be performed in the State of North Carolina, and (5) that the alleged cause of action in tort arose out of defendant's activity in the State of North Carolina at the time complained of; and (6) the Court

finds further from the affidavits presented and letters appended thereto that there was a reasonable expectation on the part of the defendant that all the said goods solicited, purchased, or installed in North Carolina were to be used within the State of North Carolina; (7) the Court finds from the evidence presented that the defendant has in fact more than the required minimum connection with the State of North Carolina and directly with customers within the State of North Carolina; (8) the Court finds that the arrangements for the payment on a model 610T Airplaco truck rig were completed by agents and representatives of defendant corporation on defendant's behalf within the State of North Carolina; and (9) the Court finds that the defendant did in fact at the time complained of have a direct financial interest in the sale of its products in the State of North Carolina made directly by defendant corporation to purchasers of its products in the State of North Carolina, such sales being handled by representatives of the defendant corporation; (10) the Court finds that Section 55-145 of the General Statutes of North Carolina as applied to the facts of this particular case would not deprive the defendant of its property without due process of law nor deny it the equal protection of the law, under the North Carolina Constitution and the United States Constitution."

Based upon his findings of fact, Judge Walker made the following conclusions of law: Defendant has sufficient contacts with the State of North Carolina so as not to be deprived of its property without due process of law, and so as not to be denied the equal protection of the law, under the United States Constitution and the North Carolina Constitution, in being compelled to submit to the jurisdiction of the courts of the State of North Carolina.

Based upon his findings of fact, and upon his conclusions of law, Judge Walker entered an order denying defendant's motion, and holding that service of summons and complaint on defendant is valid and proper by virtue of G.S. 55-145, and that such service of process would subject the defendant to a judgment *in personam.* In his order he allowed defendant 60 days from its date to answer or otherwise plead.

Defendant assigns as error the judge's findings of fact Nos. 3, 4, 5, 6, and 7, which assignments of error it has brought forward and discussed in its brief. Finding of fact No. 7 "that the defendant has in fact more than the required minimum connection with the State of North Carolina and directly with customers within the State of North Carolina" is, as defendant contends, a conclusion of law. Finding of fact No. 5 "that the alleged cause of action in tort arose out of defen-

dant's activity in the State of North Carolina at the time complained of" apparently refers to the second cause of action alleged in plaintiff's complaint, and is so discussed in defendant's brief. Even if it is not supported by competent evidence, as defendant contends, it is not decisive in the determination of defendant's motion to quash the service of process here.

The challenged findings of fact Nos. 3, 4, and 6 are supported by statements in the affidavits of T. M. Pfaff, president of plaintiff, and in letters attached thereto, and by allegations of fact in the verified complaint.

In one of Pfaff's affidavits the following facts are stated: In the latter part of April or the first part of May 1958, M. G. Parke, an agent and employee of defendant, was in Mecklenburg and Gaston Counties, North Carolina, in connection with equipment sold by his employer. Later, Parke was in High Point, North Carolina, to demonstrate the use and operation of a Model CP-10 concrete placer sold by his employer, and to instruct the purchaser thereof in its operation. M. G. Parke was again in North Carolina in the latter part of September 1959 on his employer's business to instruct the purchaser of his employer's equipment in its use. In March 1958 plaintiff signed an exclusive distributor agreement with defendant. Plaintiff signed this agreement in North Carolina. This agreement had already been signed by defendant. On 5 September 1961 plaintiff purchased from defendant a Model CP-30 concrete placer, pursuant to its distributor agreement. The distributor agreement was to be performed in North Carolina. The warranties alleged in plaintiff's first cause of action were given to plaintiff in North Carolina. The breach of warranty as to its not being merchantable occurred in the State of North Carolina. M. G. Parke was in North Carolina on his employer's business on other occasions in the year 1958 to negotiate with plaintiff on behalf of his employer, and to explain and instruct plaintiff in the use and operation of his employer's equipment. In March or April 1959 M. G. Parke was again in North Carolina on his employer's business. In February 1960 M. G. Parke was in Wilmington, North Carolina, on his employer's business in connection with the sale of his employer's equipment to Concrete Construction, Inc., to explain the use and operation of this equipment to the purchaser. James B. Kelly, territorial manager for defendant, was in Charlotte, North Carolina, on 30 and 31 March 1961 to explain defendant's new products and complete line of equipment to plaintiff. In September 1961 Kelly was again in North Carolina on defendant's business to set up and put into operation a Model CP-30 concrete placer which plaintiff had ordered from defendant.

The order for this concrete placer was solicited by defendant from plaintiff in the State of North Carolina. Prior to this defendant solicited purchases of large quantities of its equipment from plaintiff and others in the State of North Carolina. On 7 March 1961 James B. Kelly was in Charlotte, North Carolina, for the purpose of soliciting business for defendant, and making calls on customers with representatives of plaintiff. In 1963 defendant sent its representatives into the State of North Carolina for the purpose of soliciting business and promoting sales. The equipment mentioned in his affidavit was manufactured and produced by the defendant, and shipped by it into the State of North Carolina for use and distribution within the State. On 9 April 1963 Arrow Construction Equipment Company became a distributor of defendant's equipment within the State of North Carolina, and as a result large quantities of products manufactured by defendant have been shipped into the State of North Carolina for use and distribution therein.

In a letter signed by James B. Kelly, territorial manager, addressed to Pfaff, Spartan Equipment Company, and received 8 September 1961, appears the following: "We will ship the CP-30 on September 8, if possible, otherwise it will be Monday, September 11. I have advised our traffic man to expedite the shipment all possible and wire you routing and Pro No. I will schedule my trip to arrive as soon as the equipment arrives in order to set it up and put it into operation." Attached to Pfaff's affidavit is another letter by defendant signed by Kelly, addressed to an officer of plaintiff, dated 27 February 1962, which reads in part: "I will call you either on Tuesday or Wednesday and let you know my definite flight arrival time. I hope you have some really good calls lined up that I can make with Jim and close some deals for AIRPLACO." Attached to Pfaff's affidavit is a letter from defendant signed by James B. Kelly, territory manager, addressed to an officer of plaintiff, dated 23 March 1961, which reads in part: "I will be in Charlotte on Thursday and Friday, March 30 and 31. * * * I will contact you next week, either Tuesday or Wednesday and advise you of my exact arrival time. Should you be able to make arrangements for me to make some calls with you or your salesmen on Thursday, March 30, it would be appreciated. I will look forward to assisting you at your sales meeting and working with your organization."

In the other affidavit of Pfaff it is stated that in the year 1963 James B. Kelly, southeastern territorial manager for defendant, was in the State of North Carolina for the purpose of selling to R. H. Bouligny, Inc., a North Carolina corporation with its principal place of

business in Charlotte, North Carolina, a Model 610T Airplaco Truck Rig. The truck rig was sold to Bouligny and title was delivered directly from defendant to Bouligny, and plaintiff collected the purchase price thereof in the State of North Carolina as agent for defendant. Attached to this affidavit is a letter dated 27 March 1963 signed by James B. Kelly, territorial manager, addressed to Mr. Tom Pfaff and Mr. Duane Delong, Spartan Equipment Company, in which Kelly states:

> "Enclosed you will find our Credit Memo No. 1034 in the amount of $500.00 to cancel the delivery charge on the Model 610T AIRPLACO Truck Rig (ref: our Invoice No. 3484). As discussed in our telephone conversation, we will bill R. H. Bouligny, Inc. for this freight.
>
> "I have talked with Mr. Shelby of Bill's Equipment and Rentals in Miami, and his present plans are to deliver the unit to your yard in Charlotte on Saturday, March 30. * * *
>
> "The title for the truck, made out to R. H. Bouligny, Inc., is enclosed. We appreciate your taking the responsibility of collecting payment for the truck rig in exchange for the title. We will expect to receive your check immediately upon receipt of the monies from Bouligny. As you know, you cannot give them title until you have received payment in full for the rig."

We find no evidence in the record to support that part of Judge Walker's finding of fact No. 4, reading as follows: "The order for a Model 505M Mix-Elevator was solicited by agents and representatives of the defendant corporation in the State of North Carolina."

While defendant has in the record assignments of error as to findings of fact Nos. 8 and 9, they are not brought forward and discussed in its brief, and are deemed abandoned by it. Rule 28, Rules of Practice in the Supreme Court, 254 N.C. 783, 810. Regardless of this, these two findings of fact are supported by competent evidence as set forth above. Finding of fact No. 10 is a conclusion of law.

Judge Walker's findings of fact Nos. 3, 4, 6, 8, and 9, with the exception of his finding in No. 4 that the order for a Model 505M Mix-Elevator was solicited by defendant in the State of North Carolina, are supported by competent evidence, and are conclusive, notwithstanding that there is evidence *contra. Farmer v. Ferris*, 260 N.C. 619, 133 S.E. 2d 492; Strong's N. C. Index, Vol. 4, Trial, § 57, p. 365.

The crucial question for decision is: Do the findings of fact of the trial judge, which are supported by competent evidence, show that defendant, which is a Missouri corporation and is not present within the territory of the forum, is doing business in the State of North Carolina,

the State of the forum, and that there has been a reasonable method of notification to it of this action, so that the maintenance in the State of this action *in personam* against it is not prohibited by the "due process" clause of the 14th Amendment to the United States Constitution and by the provisions of Article I, section 17, of the State Constitution, and does not offend "traditional notions of fair play and substantial justice?" This question must be decided in accord with the decisions of the United States Supreme Court. *Putnam v. Publications,* 245 N.C. 432, 96 S.E. 2d 445; *Harrison v. Corley,* 226 N.C. 184, 37 S.E. 2d 489.

Recent decisions of the United States Supreme Court have greatly expanded the concept of a state's jurisdiction over nonresident defendants and foreign corporations. *International Shoe Co. v. Washington,* 326 U.S. 310, 90 L. Ed. 95, 161 A.L.R. 1057; *McGee v. International Life Ins. Co.,* 355 U.S. 220, 2 L. Ed. 2d 223; Anno. U.S. Supreme Court Reports, 96 L. Ed., p. 495 *et seq.*

The answer to the crucial question for decision on defendant's motion to quash the service of process upon it is, Yes. "Doing business in this State means doing some of the things or exercising some of the functions in this State for which the corporation was created. [Citing authority.] And the business done by it here must be of such nature and character as to warrant the inference that the corporation has subjected itself to the local jurisdiction and is, by its duly authorized officers and agents, present within the State." *Lambert v. Schell,* 235 N.C. 21, 69 S.E. 2d 11. The findings of fact supported by competent evidence show far more than the mere solicitation of orders for the purchase of goods within North Carolina, to be accepted without the State, and filled by shipment of the purchased goods interstate. The findings of fact supported by competent evidence show that the activities of defendant in North Carolina, in doing the things for which it was created, have been continuous and systematic for several years, and when such is the case presence in the State has never been doubted, and gives rise to an action *in personam* against it, though no consent to be sued or authorization to accept service has been granted. *International Shoe Co. v. Washington, supra.*

"Service on the Secretary of State [as stipulated here] is sufficient to bring into court a foreign corporation if it does not have a process agent and is doing business in this State." *Babson v. Clairol, Inc.,* 256 N.C. 227, 123 S.E. 2d 508; G.S. 55-144; *Worley's Beverages, Inc. v. Bubble Up Corp.,* 167 F. Supp. 498.

G.S. 55-146, which provides for service of process on foreign corporations by service on the Secretary of State in (d) and (e), gives defendant a reasonable time to appear and defend on the merits after being

notified of the institution of the action. "[M]odern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." *McGee v. International Life Insurance Co., supra.* Judge Walker, acting under authority of G.S. 55-146(e), allowed defendant 60 days from the date of his order to answer or otherwise plead.

Defendant assigns as error that Judge Walker did not find, as requested by it, that defendant is not domesticated in, licensed to do business in, or incorporated under the laws of North Carolina, and has no registered agent in North Carolina, on the ground such facts are not contradicted. By reason of these facts plaintiff obtained service of process upon defendant by virtue of the provisions of G.S. 55-144 and G.S. 55-146(a) and (b). The parties stipulated "the mechanics of service and return set forth in subsections (a) and (b) of Section 55-146 of the General Statutes of North Carolina were in all respects complied with." A stipulation of the parties is a judicial admission, and binding upon them. *Farmer v. Ferris, supra; Moore v. Humphrey,* 247 N.C. 423, 101 S.E. 2d 460. This stipulation in effect is tantamount to the facts defendant requested the court to find, and in the face of this stipulation the court's failure to find the facts requested is not prejudicial to defendant and not vital to the question for decision.

Defendant further assigns as error Judge Walker's failure to find a large number of other facts according to its version of the facts as set forth, as it contends, in its affidavits. All these assignments of error are overruled. Judge Walker was required to find only the ultimate facts. Strong's N. C. Index, Vol. 4, Trial, p. 364. His findings of fact supported by competent evidence are conclusive, notwithstanding the introduction of evidence to the contrary by defendant. *Trust Co. v. Miller,* 243 N.C. 1, 89 S.E. 2d 765.

All defendant's assignments of error, which have been brought forward and discussed in the brief, have been considered and are overruled. All its assignments of error in the record, which have not been brought forward and discussed in the brief, are, according to the rules of this Court, deemed to be abandoned by it. Judge Walker has made findings of fact sufficient to support his order as to each determinative fact in dispute.

We conclude that the State court has jurisdiction over defendant for the purpose of the maintenance of an action *in personam.* Judge Walker's crucial findings of fact are supported by competent evidence and plainly show that defendant, a foreign corporation, has been continuously and systematically for several years doing business in North Carolina and exercising in this State some of the functions for which it was created, and also plainly show that defendant has such sub-

stantial contacts within the State that the maintenance of this suit *in personam* does not offend "traditional notions of fair play and substantial justice." *International Shoe Co.. v. Washington, supra; McGee v. International Life Ins. Co., supra.* His crucial findings of fact supported by competent evidence support his conclusions of law, which are correct, and these in turn support his order refusing to quash the service of process upon defendant.

Defendant, as it had a right to do (G.S. 1-134; *Jones v. Loan Assn.,* 252 N.C. 626, 114 S.E. 2d 638), filed in the Supreme Court a *demurrer ore tenus* to the second cause of action alleged in the complaint, for the reason that it does not state facts sufficient to constitute a cause of action, in that plaintiff does not allege that it had a contract with Meredith Swimming Pool Company to sell equipment manufactured by defendant, but merely alleges that it had a prospect, and further, that the second cause of action fails to allege facts which indicate any malice or intent on the part of defendant to injure plaintiff, but on the contrary alleges that plaintiff's own prospect initiated the telephone call to defendant, and further, there is no allegation that defendant's agent, James Kelly, did anything but recommend the purchase of its products through another distributor, and that defendant had a legal right to conduct itself as alleged.

This is a summary of the allegations of fact contained in the second cause of action alleged in the complaint: In April 1963, and for a long time prior thereto, plaintiff had a prospect named Meredith Swimming Pool Company in Greensboro, North Carolina, and plaintiff's agent during that period of time had been in touch with Dave Meredith, an officer of that company, on a number of occasions in connection with a sale to that company of equipment handled by plaintiff as dealer for defendant. During this time Meredith called plaintiff in connection with the purchase by Meredith Swimming Pool Company from plaintiff of a Model 505M Mix-Elevator, which plaintiff handled as defendant's dealer. Plaintiff's agent quoted prices on this Mix-Elevator to Meredith. Thereafter, Meredith called James Kelly, defendant's agent, to get further information about the Model 505M Mix-Elevator. At that time Meredith intended for plaintiff to get the credit for the purchase of such Mix-Elevator. Kelly told Meredith in his conversation with him to purchase the equipment from Arrow Equipment Company, another dealer of defendant in North Carolina. Meredith bought the equipment through Arrow Equipment Company. The conversation between Meredith and Kelly occurred at a time when relations between plaintiff and defendant were deteriorating as a result of the bad experiences which plaintiff and its customers were having with a CP-30 concrete placer purchased by plaintiff from defendant, and because

of the inferior quality of such concrete placer. Kelly, acting as defendant's agent and employee, within the scope and course of his employment, wrongfully, intentionally, and maliciously diverted plaintiff's customer Meredith Swimming Pool Company to Arrow Equipment Company with the intention of damaging plaintiff's business, and caused plaintiff the loss of a sales commission in the sum of $419.50.

Although there is some authority to the contrary, it is generally held that to interfere with a man's business, trade or occupation by maliciously inducing a person not to enter into a contract with a third person, which he would have entered into but for the interference, is actionable if damage proximately ensues, when this interference is done not in the legitimate exercise of the interfering person's rights, but with a malicious design to injure the third person or gain some advantage at his expense. *Johnson v. Graye,* 251 N.C. 448, 111 S.E. 2d 595; *Coleman v. Whisnant,* 225 N.C. 494, 35 S.E. 2d 647; *Kamm v. Flink,* 113 N.J.L. 582, 175 A. 62, 99 A.L.R. 1; 30 Am. Jur., Interference, § 38; Anno., Liability for preventing one from making specific contract, 99 A.L.R. 12, and Anno., Liability of one who induces or causes third person not to enter into or continue a business relation with another, 9 A.L.R. 2d 228; Nims, Unfair Competition and Trade Marks, 4th Ed., Vol. 1, § 176; 86 C.J.S., Torts, § 54. See also *Bohannon v. Trust Co.,* 210 N.C. 679, 188 S.E. 390.

The allegations in plaintiff's second cause of action are deficient, *inter alia,* in that they do not allege that its prospective sale to Meredith Swimming Pool Company would have been consummated but for the malicious interference of defendant's agent Kelly. Further, the allegations in the second cause of action do not clearly state whether Meredith was in North Carolina when he talked over the telephone with Kelly. It has general allegations as to malice. General allegations which characterize defendant's conduct as malicious are insufficient as a matter of pleading. *Kirby v. Reynolds,* 212 N.C. 271, 284, 193 S.E. 412, 420; 86 C.J.S., Torts, p. 975. Plaintiff's second cause of action does not state sufficient facts to permit the Court to say on *demurrer ore tenus* that, if the facts stated are proved, plaintiff is entitled to recover. In our opinion, and we so hold, plaintiff's second cause of action contains a defective statement of a cause of action for malicious interference with a proposed or prospective contract, and the *demurrer ore tenus* filed in this Court should be sustained. However, this is without prejudice to plaintiff's right to move in the superior court, if it so desires for leave to amend its second cause of action under the provisions of G.S. 1-131. *Stamey v. Membership Corp.,* 247 N.C. 640, 101 S.E. 2d 814.

The result is this: On defendant's appeal, affirmed. The *demurrer ore tenus* to the second cause of action filed in the Supreme Court is sustained.